IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3156-FL

| | | |
|---|---|---|
| BRUCE KUSHNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ALVIN KELLER; ROBERT LEWIS; OLIVER WASHINGTON; JOHN MORGAN; AND GARY CRAIG OGBURN, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

The matter is before the court on plaintiff's motion for summary judgment (DE # 9) pursuant to Federal Rule of Civil Procedure 56. In response, defendants Alvin Keller ("Keller"), Robert Lewis ("Lewis"), John Morgan ("Morgan"), Gary Craig Ogburn ("Ogburn"), and Oliver Washington ("Washington") filed a partial motion for summary judgment (DE # 16), to which plaintiff responded. In this posture, these matters are ripe for adjudication. For the following reasons, the court grants in part and denies in part defendants' motion and denies plaintiff's motion for summary judgment.

## STATEMENT OF THE CASE

On August 23, 2011, plaintiff, a former state inmate, filed this action, *pro se,* pursuant to 42 U.S.C. § 1983, alleging defendants violated his rights pursuant to the First Amendment to the United States Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the

Religious Freedom Restoration Act ("RFRA") by failing to provide him kosher meals. As relief, plaintiff seeks compensatory and punitive damages.

On November 9, 2011, plaintiff filed a motion for summary judgment. In response, defendants filed a motion for partial summary judgment arguing that plaintiff cannot recover monetary damages from defendants under RFRA or RLUIPA, that Lewis and Keller may not be held liable pursuant to a theory of respondeat superior, and that defendants are entitled to qualified immunity. The matter was fully briefed.

## STATEMENT OF THE FACTS

The undisputed facts are as follows. This action arises from plaintiff's efforts to obtain a kosher meal plan during his former incarceration at Tillery Correctional Institution ("Tillery").[1] On December 2, 2008, plaintiff met with Ogburn, the Chaplain at Tillery, and explained that his Jewish religion required that he consume kosher meals. Compl. Attach. p. 4. After the meeting, Ogburn consulted Washington, the Superintendent at Tillery, regarding plaintiff's request. Id. p. 6. Washington advised Ogburn to contact Betty Brown, the DAC's Chaplaincy Services Director. Id.

On December 2, 2008, Ogburn emailed Brown posing the following question: "Does the [Religious Practice Manual] guideline satisfy Jewish kosher food requirements." Id. Brown responded that the DAC's policy regarding kosher meals was the policy set forth in the North Carolina Division of Adult Correction ("DAC") Religious Practices Reference Manual, which provided: "The inmate may select either a Lacto-Ovo-Vegetarian Diet or Alternative Diet. Diet should not contain any pork, shellfish, or catfish." Id. p. 7; Def.s' Mem. Ex. A, p. 9. Ogburn then

---

[1] Plaintiff was released from DAC custody on June 2, 2011. Washington Aff. ¶ 5.

informed plaintiff of the DAC's policy regarding meal options for Jewish inmates as set forth in the Religious Practices Resource Guide and Reference Manual. Compl. Attach. p. 7.

On December 7, 2008, plaintiff filed a grievance requesting kosher meals. Id. p. 1. In response, Washington and Morgan, Assistant Superintendent at Tillery, instructed Ogburn to again contact Brown regarding plaintiff's request for kosher meals. Washington Aff. ¶ 6. Ogburn then composed an email to Brown informing her that plaintiff filed a grievance requesting kosher meals. Compl. Attach. p. 9. Ogburn further informed Brown that he inquired about the kosher meal issue the previous week at the Central Region Chaplain's meeting, and that Chaplain Randall Speer ("Speer") informed him that Central Prison provided kosher meals to Jewish inmates. Id. Finally, Ogburn informed Brown that plaintiff told him that he previously received kosher meals at other DAC facilities.[2] Id.

In response, Brown requested from Ogburn the names of the correctional facilities where plaintiff claimed to have received kosher meals. Id. p. 10. Brown also asked how many inmates were receiving kosher meals at Central Prison. Id. Brown further directed Ogburn to conduct additional research on the issue and to report back to her. Id. Brown sent a copy of her email to Lewis. Id. pp. 10-11.

After receiving Brown's email, Ogburn contacted Speer and learned that only one inmate at Central Prison was receiving kosher meals. Id. p. 12. Ogburn then requested additional information from Spears regarding the kosher meal plan at Central Prison, but Speer responded that he did not have any additional information. Id. pp. 7-18.

_____

[2] Plaintiff informed Ogburn that he received "a type of kosher meal that did not meet the full requirements for preparation of kosher foods" at Pender and Craven Correctional Institutions. Compl. Attach. p. 16.

3

On December 9, 2008, Lewis sent Brown an email, asking her to contact the DAC Chief of Food and Nutrition Management Jackie Parker ("Parker") regarding kosher meals for Jewish inmates. Id. p. 13. On December 15, 2008, Ogburn emailed Brown, copying Washington and Morgan, as well as Lieutenant Warren Pepper ("Pepper"), asking whether Brown had any further information regarding the kosher diet question. Id. p. 20. Brown responded to Ogburn that she did not have any further information, but would let him know after she met with Parker. Id. p. 21. Ogburn followed up with Brown regarding the kosher diet issue on December 30, 2012. Id. p. 22. There is no additional correspondence regarding the issue.

In the interim, on December 11, 2008, Pepper responded to plaintiff's grievance, stating that the grievance was being determined "through Raleigh," and that plaintiff would be notified when a decision had been made. Compl. Attach. p. 2. At the Step II level of plaintiff's grievance review, prison officials informed plaintiff that Judaism was an approved religion and that according to the DAC's Religious Practice Manual he could receive a Lacto-Ovo-Vegetarian Diet or the Alternative Diet. Id.

On June 16, 2009, plaintiff sent a letter to Keller complaining that he was not provided kosher meals. Keller forwarded plaintiff's letter to Brown for a response. Id. p. 23. On July 9, 2009, Brown informed plaintiff that DAC policy did not "include kosher meals at this time." Id. Brown further re-iterated to plaintiff that he could choose between a Lacto-Ovo-Vegetarian Diet or the Alternative Diet. Id.

On March 22, 2011, plaintiff was transferred to Wake Correctional Center ("Wake") in Raleigh, North Carolina. Washington Aff. ¶ 8. Plaintiff then began receiving kosher meals. Id.

p. 4.  The DAC's Food, Nutrition, and Management Policies and Procedures currently are being

revised to include a kosher meal plan in the Religious Meals Section.  Id. ¶ 9.

## DISCUSSION

A.    Defendants' Partial Motion for Summary Judgment

     1.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v.

Liberty Lobby, 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the burden

of initially coming forward and demonstrating an absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the

nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material

fact requiring trial.  Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party

for a jury to return a verdict for that party.  Anderson, 477 U.S. at 250.

     2.    Analysis

          a.    RFRA and RLUPA

Defendants argue that plaintiff may not maintain an action pursuant to RFRA.  Title 42

U.S.C. § 2000bb et. seq., authorizes "[a] person whose religious exercise has been burdened" to

"obtain appropriate relief against a government."  Id. at § 2000bb-1(c).  RFRA initially applied to

both the states and the federal government, but the United States Supreme Court concluded in City

of Boerne v. Flores, 521 U.S. 507 (1997), that the statute exceeded Congress's remedial powers over

the states under section 5 of the Fourteenth Amendment.  See id. at 532-36.  Accordingly, the Court

5

invalidated RFRA as it applied to states and localities. City of Boerne, 521 U.S. at 532-536.; see Madison v. Riter, 355 F.3d 310, 315 (4th Cir. 2003). Thus, defendants are entitled to summary judgment for plaintiff's RFRA claim.

Regarding plaintiff's RLUIPA claim, defendants argue that plaintiff may not recover the relief he seeks--monetary damages. In response to the invalidation of RFRA, Congress created a parallel statutory scheme, RLUIPA, using virtually identical language, in which "RFRA continue[s] to apply to the federal government" and RLUIPA "mirror[s] the provisions of RFRA" in suits against the states concerning land regulation or institutionalized persons. Lebron v. Rumsfeld, 670 F.3d 540, 557 (4th Cir. 2012). Specifically, RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a). RLUIPA provides an avenue for an inmate to remove a substantial burden on his religious exercise through injunctive relief, it "does not authorize claims for official or individual capacity damages." Sossamon v. Texas, – U.S. –, 131 S.Ct. 1651, 1663 (2011) (finding RLUIPA does not authorize a private cause of action for money damages against prison personnel for action taken in their official capacity); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009); DePaola v. Wade, No. 7:11-cv-00198, 2012 WL 1077678, at *3 (W.D. Va. Mar. 30, 2012). Based upon the foregoing, plaintiff may not recover monetary damages under RLUIPA. Because plaintiff's request for damages in this action is limited to monetary relief, the court grants defendants' motion for summary judgment for plaintiff's RLUIPA claim.

b.    Respondeat Superior

Lewis, the DAC's Director of the Division of Prison, and Keller, Secretary for the DAC, are correct, they cannot be held liable for the act or omission of their subordinates pursuant to a theory

6

of respondeat superior. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 663 n.7 (1978). Rather, to state a claim pursuant to § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). Further, a plaintiff must allege that defendant personally promulgated a policy or enforced a custom that violates one of plaintiff's civil rights. <u>See</u> <u>Fisher v. Washington Metropolitan Area Transit Author.</u>, 690 F.2d 1133, 1142-43 (4th Cir. 1982) (finding that § 1983 requires a showing of defendant's personal fault either based on the defendant's personal conduct ro another's conduct in execution of the defendant's policies or customs), <u>abrogated on other grounds by</u>, <u>Cnty. of Riverside v. McLaughlin</u>, 500 U.S. 44 (1991).

Here, plaintiff argues that the DAC's religious diet policy violated his First Amendment rights. Lewis and Keller have not demonstrated that they are not the proper party for plaintiff's challenge to this policy, nor have they demonstrated that they are entitled to qualified immunity for this claim. Thus, their motion for partial summary judgment is DENIED.

        c.    First Amendment

In support of their motion for summary judgment, Washington, Morgan, and Ogburn assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." <u>Rogers v. Pendleton</u>, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly

forbidden, not whether in hindsight the action was wrongful.  Id. at 286.  The Fourth Circuit has

recognized a two-pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been
> violated on the facts alleged.  Next, assuming that the violation of the
> right is established, courts must consider whether the right was
> clearly established at the time such that it would be clear to an
> objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted).  With respect

to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was lawful in the

situation he confronted."  Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v.

Callahan, 555 U.S. 223 (2009).  A court has discretion to decide which step of the two-prong test

to analyze first.  Pearson, 555 U.S. at 242.

The court first determines whether defendants violated plaintiff's First Amendment rights.

The Free Exercise clause of the First Amendment, made applicable to the states through the

Fourteenth Amendment, provides that "Congress shall make no law . . . prohibiting the free

exercise" of religion.  U.S. Const. amend. 1; Goodall by Goodall v. Stafford County School Bd., 60

F.3d 168, 170 (4th Cir. 1995).  Under the Free Exercise Clause, an inmate has a " 'clearly

established . . . right to a diet consistent with his . . . religious scruples.' "  Lovelace v. Lee, 472 F.3d

174, 199 (4th Cir. 2006) (quoting Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir. 2003)).  "A prison

official violates this clearly established right if he intentionally and without sufficient justification

denies an inmate his religiously mandated diet."  Lovelace, 472 F.3d at 199.

In this case, the evidence reflects that Washington, Morgan, and Ogburn made efforts, albeit

at times unsuccessful, to investigate the availability of a kosher diet for Jewish inmates with the

DAC's Chaplaincy Services as well as the DAC Chief of Food and Nutrition Management. Chaplaincy Services instructed Tillery Chaplain Ogburn to follow the religious diet guidelines in the DAC's Religious Practices Reference Manual. Throughout their investigation efforts, Washington, Morgan, and Ogburn were repeatedly instructed the that the DAC policy did not permit kosher meals for Jewish inmates (at that time). Instead, Washington, Morgan, and Ogburn were directed to instruct plaintiff that he could select either a Lacto-Ovo Vegetarian Diet or Alternative Diet in accordance with the DAC's Religious Practices Reference Manual.[3] Further, Ogburn, Washington, and Morgan did not create the DAC's religious meal policy, nor could they alter it or authorize a transfer of plaintiff. Washington Aff. ¶ 8. From this evidence, the court concludes that Washington, Morgan, and Ogburn followed the DAC policy regarding the diet permitted for Jewish inmates. There is no evidence that Washington, Morgan, or Ogburn intentionally and without sufficient justification denied plaintiff a kosher diet. Thus, the court finds that these defendants did not violate plaintiff's First Amendment rights.

Even if plaintiff could establish that Washington, Morgan, and Ogburn violated his First Amendment rights, he still would not be entitled to relief. Specifically, these defendants have presented sufficient evidence for this court to find that a reasonable official would not have understood, in light of pre-existing law, that following the DAC's religious diet policy would violate the Free Exercise Clause of the First Amendment. Accordingly, Washington, Morgan, and Ogburn are entitled to qualified immunity.

---

[3] The court notes that Ogburn discovered in the course of his investigation that one Jewish inmate at Central Prison was receiving a kosher diet. However, this fact is not sufficient to infer that Washington, Morgan, and Ogburn intentionally violated his First Amendment rights.

B.      Plaintiff's Motion for Summary Judgment

Plaintiff filed a motion for summary judgment on his First Amendment, RFRA, and RLUIPA claims. As stated above, plaintiff is not entitled to relief pursuant to RFRA or RLUIPA. As a for his First Amendment claim, plaintiff has not met its burden of demonstrating that there is no genuine issue of material fact with regard to his alleged First Amendment violation. Thus, his motion for summary judgment is DENIED.

## CONCLUSION

For the foregoing reasons, defendants' partial motion for summary judgment (DE # 16) is GRANTED in part and denied in part. It is GRANTED as to plaintiff's RFRA and RLUIPA claims, as well as, to the extent Morgan, Washington, and Ogburn have demonstrated that they are entitled to qualified immunity for plaintiff's First Amendment claim. The remainder of defendants' motion is DENIED. Plaintiff's motion for summary judgment (DE # 9) is DENIED.

SO ORDERED, this 17th day of September, 2012.

LOUISE W. FLANAGAN
United States District Judge

10